IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SCOTT SCHOOLEY, SR.,**                    Case 1:14 CV 1263

     Plaintiff,

     v.                                    Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

     Defendant.                            MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Scott Schooley, Sr., filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to the exercise of jurisdiction by the undersigned in accordance with Local Rule 72.2(b)(1). (Doc. 14). For the reasons stated below, the Commissioner's decision is affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed for SSI on March 1, 2011 and DIB on March 3, 2011, alleging a disability onset date of January 1, 1991.[1] (Tr. 106, 229-41). Plaintiff applied for benefits due to a lodged bullet in his skull, left leg paralysis, and a pinched nerve in his lower back. (Tr. 106). His claim was denied initially (Tr. 106-25) and upon reconsideration (Tr. 130-63). Plaintiff requested a hearing before an administrative law judge ("ALJ") on April 24, 2012. (Tr. 190). Plaintiff,

---

1. Plaintiff previously filed an application for DIB in September 2004 which was denied on June 6, 2008. (Tr. 12). Accordingly, *res judicata* applies to the findings of the previous ALJ and thus, Plaintiff's alleged onset date for DIB is adjusted to June 7, 2008, the day immediately following the first denial. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).

represented by counsel, and a vocational expert ("VE") testified at a hearing before the ALJ on October 26, 2012, after which the ALJ found Plaintiff not disabled. (Tr. 12-21, 26-56). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff filed the instant action on June 12, 2014. (Doc. 1).

FACTUAL BACKGROUND

### Personal Background and Testimony

Plaintiff was born on March 31, 1975, and was 33 years old as of June 7, 2008, his alleged onset date. (Tr. 31). Plaintiff graduated high school and had taken some college courses. (Tr. 32). He lived in his stepfather's rental property with his fiancé and her two children. (Tr. 41). He had past work in shipping and receiving, labor, and assembly. (Tr. 33, 44). Plaintiff sustained a gunshot wound when he was sixteen but he worked substantially from 1993 to 2004. (Tr. 33). He testified his body had physically deteriorated since that time period and thus, he could not work. (Tr. 34). He had not been gainfully employed since 2001 when he was laid off from Marconi Communications and then he had worked sporadically until 2004 when he stopped altogether. (Tr. 44, 242-43).

Plaintiff testified he slept between four and five hours a night and was able to bathe, shave, and cook. (Tr. 41-42). In a typical day, Plaintiff stated he awoke early, prepared the children for school, and then drove them to school. (Tr. 42). After he came home, he usually napped until he picked the children up from school and helped them with their homework. (Tr. 42-43). He also watched TV and let the dogs out. (Tr. 43). Plaintiff washed dishes, vacuumed, and did some laundry but he rarely shopped without his fiancé present. (Tr. 43).

Plaintiff testified he had constant left hip pain, sharp pains in the right knee, and had been wearing a brace on his left foot since 1991. (Tr. 34-35). He alleged his left leg was paralyzed from the knee down since 1991. (Tr. 35). Plaintiff used a walker or cane to help him ambulate. (Tr. 37). He complained of constant, sharp pain behind his right eye which he believed was from bullet fragments, although the CT scans showed the fragments had not moved. (Tr. 35). He also complained of constant migraine headaches that began with sharp, stabbing pains and moved down his neck and back. (Tr. 38). Plaintiff stated his memory had been worsening, he was nervous in crowds of people, and could not interact with strangers. (Tr. 39). He also testified to double vision in his right eye which persisted for most of the day. (Tr. 40). Plaintiff was prescribed Fioricet, Percocet, Ambien, Neurontin, and Nexium but he said they only helped him sometimes. (Tr. 35-36). He also complained of drowsiness from the Percocet. (Tr. 36).

Plaintiff stated between eight and ten days a month his migraines would be so severe he could not get out of bed. (Tr. 45). On these days he did not move often and he did not take the children to school. (Tr. 46). He believed the frequency of his headaches had increased in the last few years but the pain level was relatively constant. (Tr. 46). When the migraines were not severe, they lasted between two and four hours. (Tr. 46). Plaintiff stated he did not feel the migraines before while he was working because he was addicted to Oxycontin but he did not want narcotic drugs for pain, even though he was currently taking Percocet. (Tr. 47). He testified that loud noises brought on the migraines and he got blurred vision when he watched TV for more than an hour or two. (Tr. 48).

### Relevant Medical Evidence

Plaintiff generally challenges only the ALJ's RFC conclusion regarding his migraine headaches and therefore waives any claims about the determinations of his other mental or

physical impairments. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010). As such, the medical evidence summarized herein will be limited to that relevant to his migraine headaches.

In February 1991, Plaintiff sustained a gunshot wound to the head; upon arrival at the hospital, he was awake and responsive to commands on his right side but not his left. (Tr. 305). He underwent surgery which went well, however bullet and skull fragments remained in Plaintiff's brain. (Tr. 320). After the surgery he regained function in the left upper extremity but left lower extremity paralysis persisted. (Tr. 306-07).

Plaintiff saw Kenneth Carbone, D.O., for various complaints from 2001 to 2004 including lower back pain, headaches, and chronic pain syndrome. (Tr. 344-45, 375-76). At appointments in 2002, his migraine pain was a ten out of ten on a severity scale and he complained of photophobia, but he otherwise characterized the headaches as intermittent. (Tr. 365, 370, 373). After that, he denied headaches or reported Oxycontin controlled the headache pain. (Tr. 345, 347). Plaintiff was discharged from Dr. Carbone's care in November 2004 for falsifying an Oxycontin prescription. (Tr. 340).

CT scans from 2004-2006 showed the bullet and skull fragments were unchanged in position or size and his brain was stable. (Tr. 392, 394, 396, 399). In April 2010, Plaintiff saw Richard Ray, M.D., for pain management related to his headaches. (Tr. 404). Plaintiff complained of right retro-orbital stabbing pain and photophobia that could be relieved by lying down. (Tr. 404). Dr. Ray prescribed Lyrica and Elavil. (Tr. 407).

On February 16, 2012, Plaintiff reported to Jose Mendoza, M.D., that he had constant headaches with an aching and stabbing pain at a severity of three out of ten. (Tr. 461). Dr. Mendoza referred Plaintiff to a neurologist, requested a CT, and prescribed Neurontin. (Tr. 462).

Approximately a week later, Plaintiff returned to Dr. Mendoza and complained that his pain was persistent at the severity level of four out of ten. (Tr. 463). He also complained of associated back and neck pain. (Tr. 463). Dr. Mendoza prescribed Fioricet at Plaintiff's request because he said it helped his pain. (Tr. 463-64). Plaintiff's CT scan at this time showed no significant changes or abnormal enhancements since his 2006 CT. (Tr. 469-70).

At two appointments in March and April 2012, Plaintiff sought migraine treatment with neurologist Dhruv Patel, M.D., who started him on Topamax and Fioricet for pain. (Tr. 458). Plaintiff claimed he had severe headaches and general left-side weakness with occasional spasms. (Tr. 451, 455). Dr. Patel noted Plaintiff might be considered disabled and could not work with his headaches. (Tr. 453, 458).

For about eight months in 2012, Parshotam Gupta, M.D., treated Plaintiff for constant severe headaches at a ten out of ten severity level, lower back pain, and leg pain. (Tr. 485-99). Dr. Gupta prescribed Fioricet, Neurontin, and Ambien and advised Plaintiff to stay active with no bed rest. (Tr. 496).

***Consultative Examiners***

In July 2011, Plaintiff underwent a consultative examination with Brenda Stringer, M.D., where he complained of headaches, back pain, right knee pain, and left lower extremity weakness. (Tr. 412-13). Dr. Stringer observed that while Plaintiff had a slight limp it was not unsteady and remarked Plaintiff did not need an assistive device. (Tr. 414). She found he was comfortable in both supine and sitting positions, had normal intellectual functioning, and good memory. (Tr. 414). She also observed decreased strength and range of motion in the left leg, negative straight leg raise tests, and an inability to heel/toe walk or perform a tandem gait. (Tr.

415). She opined he could sit for several hours, stand or walk for about fifteen minutes, and had normal upper extremity functions except for minimal weakness in the left arm. (Tr. 416).

In August 2011, Plaintiff had a psychological consultative examination with Thomas Zeck, Ph.D., where he complained of light sensitivity, stabbing right eye pain, back pain, depression, and anxiety. (Tr. 422-23). Plaintiff stated he was depressed because he was bored and was not able to support his children. (Tr. 425). His inability to find work and support himself also caused anxiety. (Tr. 425). Dr. Zeck opined Plaintiff had the ability to understand, remember, and carry out instructions and was able to maintain attention and concentration for simple tasks, and most likely for multi-step tasks as well. (Tr. 427). He also found Plaintiff's pain may be a distraction which could affect his persistence and pace but mentioned he did not seem to have difficulty sitting. (Tr. 427). Dr. Zeck believed Plaintiff was capable of performing work as long as it was not too strenuous or complicated. (Tr. 428).

Plaintiff underwent a third consultative examination in December 2011 with Khalid Darr, M.D., at which he stated he needed a cane to ambulate, got severe headaches which lasted all day, and had back pain which radiated into both legs. (Tr. 430-31). Dr. Darr noted a limp, low back pain, and loss of range of motion in the left ankle but otherwise normal physical findings. (Tr. 432-33, 435-38). He also observed a negative straight leg raise test, ability to walk heel/toe, and an inability to perform a tandem gait. (Tr. 433). Dr. Darr opined Plaintiff had a moderate to severe limitation in carrying and lifting but his activities of daily living were intact. (Tr. 434).

On March 12, 2012, Plaintiff had another psychological consultative examination with James Spindler, M.S., where he again complained of frequent headaches, back pain, sciatica, and right knee pain. (Tr. 444). Mr. Spindler noted mild depression and anxiety but Plaintiff reported no panic attacks. (Tr. 446). Mr. Spindler found Plaintiff to be in the average range of

intelligence, with no major difficulties focusing during the interview, and the ability to interact with others and cope reasonably well with life stressors. (Tr. 448-49).

### State Agency Reviewers

In June 2011, Gerald Klyop, M.D., opined Plaintiff could occasionally lift or carry ten pounds and frequently lift or carry less than ten pounds. (Tr. 112). He could stand or walk for two hours and sit for six hours out of an eight hour workday. (Tr. 112). He also was limited in lower extremity pushing and pulling with no ability to operate left foot controls. (Tr. 112). He could occasionally climb ramps, stairs, ladders, ropes, or scaffolds, and occasionally stoop, kneel, crawl and crouch. (Tr. 112). He had no manipulative, visual, communicative, or environmental limitations except that he was to avoid even moderate exposure to hazards. (Tr. 113).

On reconsideration in January 2012, Linda Hall, M.D., concurred with Dr. Klyop's opinion except she stated Plaintiff should never climb ladders, ropes, or scaffolds due to his instability without a cane. (Tr. 143). She also further restricted Plaintiff to avoiding all exposure to hazards due to his left lower extremity weakness. (Tr. 144).

### ALJ Decision

In January 2013, the ALJ found Plaintiff had the severe impairments of status post remote gunshot wound to the head, history of migraine headaches, disc space narrowing of the lumbosacral spine, and joint strain; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 15-16). The ALJ then found Plaintiff had the RFC to perform sedentary work except that he cannot climb ladders, ropes, or scaffolds; can only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; and he cannot operate foot controls with his left foot or be exposed to workplace hazards. (Tr. 17). Based on the VE testimony, the

ALJ found Plaintiff could perform the jobs of food and beverage order cook, charge account clerk, and document preparer. (Tr. 20).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1.        Was claimant engaged in a substantial gainful activity?

2.        Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.        Does the severe impairment meet one of the listed impairments?

4.        What is claimant's residual functional capacity and can claimant perform past relevant work?

5.        Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

### DISCUSSION

In his sole assignment of error, the Plaintiff alleges the ALJ erred because he failed to assess limitations in the RFC resulting from Plaintiff's severe migraines. (Doc. 17, at 1).

### *RFC*

Although not phrased as such, Plaintiff is essentially arguing the ALJ did not have substantial evidence to support an RFC that did not include limitations based on migraine headaches. If the ALJ's decision was supported by substantial evidence, this Court must affirm. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. § 416.929. The RFC determination is one reserved for the ALJ. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5.

Here, the ALJ clearly evaluated the evidence of record in making his determination; he discussed Plaintiff's testimony, treatment notes, and medical opinions. In his decision, the ALJ summarized Plaintiff's subjective complaints of increased frequency and pain and then compared those complaints with the treatment records and medical opinions. (Tr. 17-19, 35-48). He particularly noted there had been no significant changes in Plaintiff's CT scans since 1991, a period which included Plaintiff being employed full-time. (Tr. 18, 392, 394, 396, 399, 469-70). He cited treatment records which showed Plaintiff's headache severity had decreased from a ten out of ten, during 2002-2004, to between a three or four out of ten, in 2012. (Tr. 18, 365, 370, 373, 461, 463). The ALJ also discussed the inconsistent activities of daily living which included daily childcare, light housework, walking the dog, and watching TV. (Tr. 18, 42-43). Furthermore, the medical opinions of four consultative examiners and all of the state agency reviewers concluded Plaintiff was capable of working and noted no particular limitations in relation to migraines or the negative effects the symptoms could have on Plaintiff's ability to work. (Tr. 18, 110-13, 140-44, 257, 412-16, 422-28, 430-38, 444-49).

It is true that other times in 2012, Plaintiff complained of pain as a ten out of ten and remarked that some days he could not perform the activities of daily living noted above, but that does not make the ALJ's citation to contrary evidence inappropriate. (Tr. 46, 485-99). Certainly,

10

there are places in the record which support Plaintiff's allegations of severe migraine pain, but the question on review is not whether substantial evidence could support another conclusion but rather whether substantial evidence supports the conclusion reached by the ALJ. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Here, substantial evidence supported the ALJ's opinion that the objective medical evidence did not indicate the need for any limitations related to migraines or a complete inability to work.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI is supported by substantial evidence, and therefore the Commissioner's decision is affirmed.


 s/James R. Knepp II
United States Magistrate Judge